SUE MORIEARTY, Plaintiff-Appellant, v. CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0452

Opinion filed January 31, 1985.—Modified on denial of rehearing March 26, 1985.

William A. Radkey, of Stratton, Nardulli & Lestikow, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff, formerly a supervising psychologist at Jacksonville Mental Health and Developmental Center (JMHDC), filed an action in the circuit court of Sangamon County for administrative review of defendant, Civil Service Commission's (CSC), denial of her appeal of her layoff. The Department of Personnel (DOP) had approved the layoff plan. The CSC accepted its staff findings and denied plaintiff's appeal without holding formal or informal hearings. The circuit court affirmed the CSC's decision.

Plaintiff argues that the CSC's decision was against the manifest weight of the evidence, that DOP Rule 2—525 was in conflict with section 8b.13 of the Personnel Code (Ill. Rev. Stat. 1981, ch. 127, par. 63b108b.13; Department of Personnel Rule 2—525), and that therefore, plaintiff's layoff was improper. Plaintiff also argues the statistical methodologies used in assessing disproportionate impact were rules as defined by The Illinois Administrative Procedure Act (IAPA) (Ill. Rev. Stat. 1981, ch. 127, par. 1001 et seq.). Therefore, they were ineffective, absent promulgation according to the IAPA.

We affirm.

Plaintiff is a white, nonhandicapped female who is not a member of any national origin minority group. She was certified pursuant to the Personnel Code and had worked for the Department of Mental Health and Developmental Disabilities (DMHDD) since 1972. On September 28, 1981, the director of the DMHDD sent plaintiff a preliminary layoff letter notifying her that due to lack of funds and a reorganization plan, she would be laid off. The letter informed plaintiff of her appeal and transfer options under DOP Rules.

The director of the DMHDD requested DOP approval of the layoff plan. The DOP approved the plan.

Plaintiff appealed her layoff to the CSC, alleging that the entire layoff plan had a disproportionate impact on race and/or sex groups.

Since the layoff plan violated DOP Rule 2—525, plaintiff argued her layoff was ineffective. (DOP Rule 2—525, amended June 6, 1976.) Plaintiff's statistical format considered all females, handicapped, minority surnamed, and nonwhite males who were sent a preliminary layoff letter.

The CSC staff investigated whether plaintiff's layoff violated the Personnel Code or Rules pursuant to section 10(13) of the Personnel Code. (Ill. Rev. Stat. 1981, ch. 127, par. 63b110(13).) The section enables the CSC to hear or conduct investigations as it deems necessary of appeals of layoff which are filed in a timely fashion by employees. The CSC determines whether the provisions of the Personnel Code or Rules relating to layoff have been complied with in the individual layoff. Ill. Rev. Stat. 1981, ch. 127, par. 63b110(13).

The CSC assessed the impact of the layoff plan on plaintiff's race and sex group. Three statistical methodologies were used. The Department of Human Rights (DHR) method used equal employment opportunity job categories. The DOP method used occupational series. Plaintiff was in the psychologist series. Both methodologies started with employees at JMHDC as the measuring group. However, there were insufficient employees in plaintiff's groups for valid statistical results, so department-wide data was used. The comparison was made on the basis of white females affected by the layoff as opposed to white males. No disproportionate impact was found.

The third method, the CSC method, considered two DHR job categories but stayed within JMHDC. Males affected by the layoff plan were compared to females affected by the layoff plan. "Affected" persons included all those sent a preliminary layoff notice, regardless of eventual retentions, position reductions, or position shifting. Within the facility, five out of 39 males were scheduled for layoff. There were nine out of 62.5 females scheduled for layoff. Roughly two-thirds of the employees at the facility were women. No disproportionate impact was found.

On August 20, 1982, the CSC adopted its staff's findings and denied plaintiff's appeal. On administrative review, the circuit court affirmed the CSC's decision.

■ Initially, we address defendant's contention, raised for the first time on appeal, that the circuit court affirmed the CSC's decision using an erroneous standard of review. Defendant argued that it may at its discretion conduct investigations or hearings into appeals of layoff. (Ill. Rev. Stat. 1981, ch. 127, par. 63b110(13).) Since denial of plaintiff's layoff came after an investigation, not a hearing, the court should limit its review to whether the agency's decision was arbitrary,

capricious or an abuse of discretion.

The term "investigation" applies to a "nonjudicial function of an administrative agency for a general one-sided presentation of issues without issues drawn, and 'hearing' is appropriate to quasijudicial proceedings which include parties, issues of law and fact, and at which parties are entitled to be present, participate, and obtain records of the proceedings." (*Roosevelt-Wabash Currency Exchange, Inc. v. Fornelli* (1977), 49 Ill. App. 3d 896, 899, 364 N.E.2d 449, 452.) Defendant cites two cases decided under the Fair Employment Practices Act (Ill. Rev. Stat. 1971, ch. 48, par. 851 *et seq.*—since repealed) in support of its position. We find them inapposite.

In *Klein v. Fair Employment Practices Com.* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370, the Commission, acting on its investigator's recommendation, dismissed plaintiff's allegation of discrimination. The trial court affirmed the Commission's decision. The court on appeal remanded because an inadequate record had been presented on review. The court noted that dismissal of a charge on an investigator's recommendation was subject to the arbitrary and capricious standard of review. In *Unger v. Sirena Division of Consolidated Foods Corp.* (1978), 60 Ill. App. 3d 840, 377 N.E.2d 266, the court noted the *Klein* language, but decided the issue before it on the manifest weight standard.

We find the manifest weight of the evidence test is the appropriate standard of review.

In *Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166, the court held that a certified employee subject to layoff was not entitled to a plenary hearing before layoff. The court discussed the employee's pre-layoff rights.

"A certified employee has the right to petition the Director, within 15 days of receipt of layoff notice, for a reconsideration (Rule 2—596), and a right to request a hearing before the Civil Service Commission, which may consist of a staff investigation, or informal hearing, or formal hearing, on the validity of the layoff." (56 Ill. 2d 70, 79, 305 N.E.2d 166, 170.)

The court in *Powell* equated the staff investigation with a stage in the hearing process.

Additionally, the record shows the CSC accepted the findings of its staff investigators. It acted on those findings in denying plaintiff's appeal. It is that action which plaintiff appeals here. The findings and conclusions of an administrative agency on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1981, ch. 110, par. 274.) Illinois courts have construed this statute to mean that

courts may not interfere with the discretionary authority vested in administrative agencies unless that authority is utilized in an arbitrary or capricious manner or the administrative decision is against the manifest weight of the evidence. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550, 426 N.E.2d 885, 887.

A reviewing court may not reweigh the evidence or make independent determinations of fact. The function of the reviewing court is to determine whether the agency's findings are against the manifest weight of the evidence. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085; *Schioniger v. County of Cook* (1983), 116 Ill. App. 3d 895, 899, 452 N.E.2d 783, 786-87.

■ Plaintiff's argument that the CSC's decision was contrary to the manifest weight of the evidence is premised on three assertions of factual flaws in the methodology used to assess impact. First, plaintiff argues the CSC improperly considered only plaintiff's minority group in assessing disproportionate impact. Under DOP Rule 2—525 as it existed when plaintiff appealed her layoff, the director had authority to disapprove a layoff plan which resulted in a disproportionate impact on affected employees on the basis of race or sex. (Rule 2—525, amended June 6, 1976.) The CSC had authority to review whether an employee's layoff was violative of the Personnel Code or Rules (Ill. Rev. Stat. 1981, ch. 127, par. 63b110(13)). Two of the methods therefore considered plaintiff's nonminority race status and plaintiff's sex in assessing impact. The third methodology employed a straight sex base comparison.

Plaintiff argues all minority status individuals should be considered together and compared with nonminority males to assess disproportionate impact. Minority groups are not amalgamized for the purposes of determining discrimination or disproportionate impact. (*Beane v. Millers Mutual Insurance Association* (1980), 90 Ill. App. 3d 258, 412 N.E.2d 1124.) Plaintiff or plaintiff's minority group, women, would not be injured or affected by a plan having a disproportionate impact on other minority groups.

Secondly, plaintiff asserts the CSC's data was flawed because the CSC arbitrarily used department-wide employment statistics when it found an insufficient number of employees within plaintiff's employment category and professional series at JMHDC. Only nine persons were within plaintiff's professional series and five persons were in her employment category at JMHDC. The size of the measuring group is of critical importance in assessing impact. (*Mayor of the City of Phila-*

*delphia v. Educational Equality League* (1974), 415 U.S. 605, 39 L. Ed. 2d 630, 94 S. Ct. 1323.) In *City of Philadelphia* the court noted that statistical data and discriminatory impact shown by use of a measuring group of 13 was highly suspect and created an inherent flaw in straight percentage comparison data. Under the circumstances presented here, we cannot state the CSC's decision to use departmental data was arbitrary.

Finally, the plaintiff argues that the methodology which considered only those affected by the layoff plan at JMHDC was flawed because not all those sent a preliminary layoff letter were in fact "affected" by the layoff. She contends that an employee assigned to a temporary position and an employee who was retained because of another's retirement were not affected by the layoff. We find little merit in this argument. First, the employee assigned to the temporary position was still subject to layoff. Secondly, all of those subject to layoff were affected in their employment choices and options. Plaintiff also had these options.

Defendants' decision was supported by the evidence. Therefore, the circuit court's decision affirming the administrative agency was not contrary to the manifest weight of the evidence.

■ Plaintiff maintains that DOP Rule 2—525 was in conflict with section 8b.13 of the Personnel Code when her layoff plan was approved; therefore, her layoff was invalid. She points to the 1982 amendment of Rule 2—525 as illustrating the conflict. Section 8b.13 states the department shall have rules:

> "For layoffs by reason of lack of funds or work, abolition of a position or material change in duties or organization, and for reemployment of employees so laid off, giving consideration in both layoffs and reemployment to performance record, seniority in service, and impact on achieving equal employment opportunity goals." (Ill. Rev. Stat. 1981, ch. 127, par. 63b108b.13.)

Before the 1982 amendment Rule 2—525 stated:

> "*DISAPPROVAL*: The Director may disapprove by returning to the originating agency any layoff plan which results in a disproportionate impact on affected employees on the basis of race or sex." (DOP Rule 2—525, amended June 6, 1976.)

In 1982 the Rule was amended to state the director could disapprove any plan which had a disproportionate impact in achieving equal employment opportunity goals. DOP Rule 2—525, amended August 12, 1982.

First, the Code's provisions are broader than those in the former

rule. However, they were not in conflict. Secondly, plaintiff's minority group, sex, was given consideration under the former rule. She was not harmed by application of the narrower rule. Plaintiff's layoff was not invalidated because the impact of the plan was calculated only as to racial and sexual minority groups.

■ Finally, plaintiff argues that the statistical methodologies used were rules under the IAPA. (Ill. Rev. Stat. 1981, ch. 127, par. 1003.09.) Since the methodologies were not adopted in accord with the IAPA, the layoff was invalid as based upon nonpromulgated rules.

Section 3.09 of the IAPA states in part:

> " 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (a) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency." Ill. Rev. Stat. 1981, ch. 127, par. 1003.09.

In *Holliday v. Civil Service Com.* (1984), 121 Ill. App. 3d 763, 460 N.E.2d 358, the plaintiff argued his dismissal was without cause because he had violated a departmental guideline, not policy. He argued that he could only be discharged for violating a departmental policy which had been adopted pursuant to the IAPA. The court noted that the IAPA contemplates situations where an agency is promulgating rules which the public must follow or which affect the public, not internal employment matters. 121 Ill. App. 3d 763, 774, 460 N.E.2d 358, 365-66.

As stated in *Holliday*, the supreme court has determined that the Civil Service Commission is not required to specify by rule every act or omission which would be considered cause for discharge. (*Joyce v. City of Chicago* (1905), 216 Ill. 466, 75 N.E. 184; *Kammann v. City of Chicago* (1906), 222 Ill. 63, 78 N.E. 16.) *Holliday* dealt with discharge. The instant case concerns layoff. Our supreme court has stated that the same protections through due process required for about-to-be discharged employees is not required for about-to-be laid off employees. *Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166.

The methods used were not agency statements with general applicability. (*Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 177-78, 470 N.E.2d 1029, 1033-34.) The various statistical data and methods used by the Department were used to determine the impact on achieving equal opportunity goals for women at the Department and at the facility. The use of statistical data and the methods in this case cannot be considered as generally applicable in all cases. The methodology used to determine impact was simply reasoning by which

the agency reached its decision. By definition, they were not rules.
For the above reasons, we affirm the circuit court.

Affirmed.

GREEN, P.J., and MILLS, J., concur.