BOARD OF EDUCATION OF PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 202, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—85—0659

Opinion filed May 21, 1986.

900

McCULLOUGH, P.J., dissenting.

Todd Faulkner and Bruce C. Mackey, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Charles S. Watson, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Gregory J. Malovance and David B. Love, both of Winston & Strawn, of Chicago, for respondent Plainfield Association of Clerical and Secretarial Staff, IEA/NEA.

JUSTICE WEBBER delivered the opinion of the court:

Petitioner, the board of education of Plainfield Community Consolidated School District No. 202, Will and Kendall Counties, (District), appeals from an order of the Illinois Educational Labor Relations Board (Board), pursuant to section 16(a) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1716(a)). The Plainfield Association of Clerical and Secretarial Staff, IEA/NEA (association), is an additional appellee.

The case had its genesis in a representation petition for an election filed with the Board. It sought a bargaining unit consisting of "all regularly employed secretaries employed by Plainfield School District #202 including part-time, full-time, hourly, salaried and sub-contracted secretaries" and excluding "Plainfield School District #202 superintendent's secretary only" pursuant to section 7(c) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1707(c)). The District objected to the inclusion in the bargaining unit of certain employees, who, the District claimed, were confidential employees within the meaning of section 2(n) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1702(n)). A hearing was convened before a hearing officer of the Board who found that three employees were confidential. She further found that seven employees were not. These were: Norma Simmons, secretary to the assistant superintendent for instruction and personnel; a business accountant; and five employees who were secretaries to the high school, junior high school, and elementary school principals.

On review the Board affirmed the findings of its hearing officer and this appeal ensued. No issue is raised on appeal concerning the three employees who were found to be confidential, and the appellant's brief makes no mention of the business accountant who was found not to be confidential. The controversy centers on the secretaries and the issue is thus framed as to whether the Board's order finding that they were nonconfidential employees is against the manifest weight of the evidence, or contrary to law.

The predicate upon which the issue is based is determined by the

interplay of various sections of the Act, the dominant one being whether or not principals of schools are managerial employees. These are defined in section 2(o) (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1702(o)). Confidential employees under section 2(n) are those who assist managerial employees. Under section 4 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1704) the employer is not required to bargain with such employees.

■ Before proceeding to the merits of this appeal, we must first consider the question of the jurisdiction of this court. We raised the question *sua sponte* and required the parties to state their views at the time of oral argument. An appellate court has the duty to consider its jurisdiction whether or not the issue has been raised by the parties. *Rothert v. Rothert* (1982), 109 Ill. App. 3d 911, 441 N.E.2d 179.

The facts giving rise to the issue are not controverted. The Board issued its decision on August 14, 1985, and sent it to the District via registered mail on the following day, August 15. The District received it on August 19 and filed its notice of appeal on September 21.

Section 16 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1716) provides in pertinent part that appeals from a final order of the Board may be taken "in accordance with the provisions of the Administrative Review Law, as now or hereafter amended." Section 3—103 of the Code of Civil Procedure states:

"Commencement of action. Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby. *The method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency,* but if no method is provided, a decision shall be deemed to have been served either when personally delivered or when deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected thereby ***." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 3—103.

There is no specific provision in the Act regarding the service of the final order of the Board. Section 5(g) of the Act provides in pertinent part:

"(g) To accomplish the objectives and to carry out the duties prescribed by this Act, the Board may subpoena witnesses, subpoena the production of books, papers, records and documents which may be needed as evidence on any matter under inquiry

and may administer oaths and affirmations.

\*\*\*

Any subpoena, notice of hearing, or other process or notice of the Board issued under the provisions of this Act may be served personally, by registered mail or by leaving a copy at the principal office of the respondent required to be served. A return, made and verified by the individual making such service and setting forth the manner of such service is proof of service. A post office receipt, when registered mail is used, is proof of service." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1705(g).)

This provision at a minimum contemplates that registered mail will be utilized in discharging the functions of the Board. What is more significant to our decision is the power of the Board to promulgate rules. This power is found in section 5(h) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1705(h)), and the Board has done so (80 Ill. Admin. Code, ch. III, sec. 1100 *et seq.* (1984)). Section 1100.30 entitled "Computation and Extensions of Time" provides:

"a) In computing any period of time prescribed by the Act or these rules, the day of the act, event, or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included. If the last day falls on a Saturday, Sunday, or legal holiday, the time period shall be automatically extended to the next day that is not a Saturday, Sunday or legal holiday.

b) When a time period prescribed under the Act or these rules is less than seven days, intervening Saturdays, Sundays, or legal holidays shall not be included.

c) *Whenever a time period begins running upon the service of notice or other document upon a party, and service is effected by mail, three days shall be added to the prescribed period.* However, three days shall not be added if any extension of time has been granted.

d) Extensions of time will be granted only upon timely application to the Board or the presiding hearing officer, and only upon a specific showing that compliance with the deadline would be unduly burdensome for the party seeking the extension." (Emphasis added.)

■ It is fundamental that administrative rules and regulations have the force of law and are construed under the same standards which govern the construction of statutes. *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57,

100 S. Ct. 87.

■■■ In our opinion, by reading together the statutes and rules set forth above, the District's notice of appeal was timely. It was sent by registered mail on August 15; under the rules three days is to be added to this date bringing the matter to August 18; in 1985 that date fell on a Sunday and therefore one day is further added under the rules; this brings the crucial counting day to August 19; the notice of appeal was filed September 21, or 33 days later, well within the 35-day limit set by section 3—103 of the Code of Civil Procedure.

The dissent argues cogently that since "service" is not specifically spelled out in the Act the 35-day limitation found in the Code of Civil Procedure must govern and the counting must begin upon the date of mailing, August 15. September 21 is obviously more than 35 days beyond that date. The dissent further argues that picking out a single sentence in the rules does violence to orderly procedure and in any event section 1100.30 of the rules relates only to internal procedures before the Board.

The preceding section of the rules (80 Ill. Admin. Code, ch. III, sec. 1100.20 (1984)) deals with procedures before and within the Board. Subparagraph (a) of that section begins: "All documents relating to any proceeding before the Board shall be filed in either the Board's Springfield or Chicago office." Subparagraph (c) of the same section provides for methods of service of "[p]etitions, intervening claims, unfair labor practice charges and subpoenas." Nothing appears to limit section 1100.30 relating to computations of time to internal procedures. It is general in nature, just as section 1.11 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1983, ch. 1, par. 1012) relates to all statutes of the State.

Since time computations under the rules are general in nature, it follows that they apply to both external and internal proceedings of the Board. The provisions for denial of the three-day extension if any other extensions have been granted obviously applied to internal proceedings. It would make little sense for the Board to grant extensions to itself. "[I]t is a fundamental rule of statutory construction that each word, clause, and sentence in a statute must, if possible, be given some meaning." (*Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 519, 153 N.E.2d 72, 74.) The same principle applies to rules. *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320.

We have recently faced the same problem in *Gemini Services, Inc. v. Martin* (1986), 141 Ill. App. 3d 17, 489 N.E.2d 1145. The rules

there were those of the Human Rights Commission, but they were no more models of draftsmanship then those in the instant case. We upheld a similar extension of time for the service of orders.

■■ It seems apparent to us that the Board in the instant case like the Human Rights Commission in *Gemini* was attempting to deal with the well-known vagaries of the United States Postal Service. The solution is less than perfect and appellants should be aware that they are tempting fate by waiting until the final minute to file their notices of appeal. Nonetheless, we conclude that we have jurisdiction.

We turn now to the merits of the appeal. Extensive evidence was taken from the secretaries, principals, and other personnel of the District concerning their duties. Since it is unlikely that any two districts would be organized in the same fashion, and, further, since this is a manifest weight case, any extensive recitation of the evidence would be fruitless. It seldom occurs that one manifest weight case is any precedent for another.

As we have indicated, the basic question is whether Norma Simmons and the secretaries are confidential employees within the meaning of the Act, which defines them as:

" 'Confidential employee' means an employee, who (i) in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate determine and effectuate management policies with regard to labor relations or who (ii) in the regular course of his or her duties has access to information relating to the effectuation or review of the employer's collective bargaining policies." Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1702(n).

Before the Board the District argued only subsection (i) and at oral argument before this court it withdrew any contention under subsection (ii).

Evidence from the secretaries to the principals indicated, as correctly found by the hearing officer, that they performed duties as follows: (a) maintaining attendance records for teachers and students; (b) opening mail that is not marked confidential; (c) filing performance evaluations; (d) typing memos that summarize disciplinary meetings; (e) typing reprimand letters or memos; (f) typing grievance responses; (g) typing the principals' budget submissions; (h) filing correspondence; and (i) typing responses to teacher change requests from parents.

Three principals testified at the hearing: James Waldorf of the high school, David Nesper of the junior high school, and Charles Anderson, representing the three elementary principals. Summarized

correctly by the hearing officer, their evidence showed their responsibilities to be: (a) responding to grievances at the first step; (b) administering the teacher performance evaluation program at their buildings; (c) making hiring and discharge recommendations; (d) initiating teacher discipline in their buildings; (e) processing involuntary teacher transfers and the resulting objections; (f) responding to parental complaints about teachers; and (g) responding to teacher change requests made by parents.

Norma Simmons, secretary to Emmet Fleming, assistant superintendent for instruction and personnel, must be considered separately from the secretaries to the principals. Fleming testified that in the past he had been the chief spokesman for the District in negotiating with the teachers. At the time of hearing he was a member of the negotiating team and would be the chief negotiator with the secretaries. According to the testimony of Simmons and Fleming, her ordinary duties are not substantially different from those of the secretaries to the principals with one exception. Data relating to labor relations is typed for him by Gail Moody, a part-time secretary. Moody was found by the hearing officer to be a confidential employee and this is not contested on appeal. If Moody had overflow work, it was assigned either to the superintendent's secretary or to Simmons. Further, it is not contested that Fleming was one who formulated, determined and effectuated policies with regard to labor relations within the meaning of the Act.

■■ ■ We begin our discussion of the issues by a brief review of fundamental principles governing appeals from an administrative agency. Under section 3—110 of the Code of Civil Procedure the findings and conclusions of the administrative agency on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085; *Moriearty v. Civil Service Com.* (1985), 131 Ill. App. 3d 198, 474 N.E.2d 1291.) Courts may not interfere with the discretionary authority vested in an administrative agency unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is contrary to the manifest weight of the evidence. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.

■■ ■ A reviewing court may not reweigh evidence or make independent determinations of facts. The function of the reviewing court is to determine whether the agency's findings are against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085; *Moriearty v. Civil Service Com.* (1985), 131 Ill. App. 3d 198, 474 N.E.2d 1291.) A court may not substitute its judg-

ment for the agency's judgment. (*Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322, 326.) However, the courts of review are not bound by the agency's interpretations of law. Where administration of a broad statutory standard has been delegated to an agency's discretion, the court should rely upon the agency's interpretation where there is reasonable debate as to the statute's meaning. (*NLRB v. Hendricks County Rural Electric Membership Corp.* (1981), 454 U.S. 170, 70 L. Ed. 2d 323, 102 S. Ct. 216; *Bruns v. Department of Registration & Education* (1978), 59 Ill. App. 3d 872, 876, 376 N.E.2d 82, 85.) Here, the Board determined that section 2(n) of the Act should not be construed broadly. It then found that under the facts presented in the instant situation, the disputed employees were not confidential employees under section 2(n)(i).

The policy behind the Act is stated in section 1. The broad purpose of the Act is to "promote orderly and constructive relationships between all educational employees and their employers," to regulate labor relations between educational employees and employers, and to provide a procedure for resolving collective bargaining disputes. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1701.) In section 7(a) of the Act, the Board is directed that in determining the appropriateness of a bargaining unit, it should decide the appropriate unit "in order to ensure employees the fullest freedom in exercising the rights guaranteed by the Act," and consider several listed factors. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1707(a).) Prior to the Act, there was no policy favoring or disfavoring collective bargaining among educational employees. (See generally *Chicago Division of the Illinois Education Association v. Board of Education* (1966), 76 Ill. App. 2d 456, 222 N.E.2d 243.) As noted in the statement of policy, the purpose of the Act is to alleviate situations injurious to the public and caused by educational employee disputes. (See Ill. Rev. Stat., 1984 supp., ch. 48, par. 1701.) Remedial legislation should be construed liberally to effectuate its purposes. *S. N. Nielson Co. v. Public Building Com.* (1980), 81 Ill. 2d 290, 410 N.E.2d 40; *Hettermann v. Weingart* (1983), 120 Ill. App 3d 683, 690, 458 N.E.2d 616, 621.

Reference to section 2(n) of the Act, set forth above, shows that there is a two-part definition of a confidential employee. Subsection (i) is generally called the "labor-nexus" test and subsection (ii) is generally called the "access" test. While the Federal National Labor Relations Act (NLRA) contains no definition of a confidential employee, the tests found in the Illinois Act have been developed by the National Labor Relations Board (NLRB). As noted in *Hendricks*, the NLRB has always excluded from the bargaining unit employees who

had advance notice of the employer's position with respect to labor relations matters. On the other hand, mere access to confidential information has been rejected by the NLRB as a basis for excluding employees from the benefits of the NLRA. As we have already indicated, the instant appeal is concerned only with the labor-nexus test.

In *B. F. Goodrich Co.* (1956), 115 N.L.R.B. 722, 724, the NLRB articulated the labor-nexus test and stated that confidential employees included only those who assist and act in a confidential capacity to persons who formulate, determine and effectuate management policy in the labor relations field. It is clearly no accident that these words were incorporated verbatim in the Act. It follows that the definition in our Act should be construed consistently with Federal developments.

■ The analysis must proceed by determining whether the principals are managerial employees, *i.e.*, whether they formulate, determine, and effectuate policy in the field of labor relations. The parties take divergent views of the matter. The District claims that they meet all three prongs of the test; the Board, *contra*, admits that they effectuate policy, but do not formulate or determine such policy. The District argues that "labor relations" is a much broader term than "collective bargaining" and that the Board construed "labor relations" too narrowly. The association notes that the NLRB has always considered the terms "formulate, determine and effectuate" in the conjunctive, not the disjunctive.

The cases relied upon by the District (*NLRB v. Rish Equipment Co.* (4th Cir. 1982), 687 F.2d 36; *Union College* (1980), 247 N.L.R.B. 531) are inapposite. In each of those cases secretaries were excluded from the bargaining unit but in each case it was determined that the persons to whom the secretaries reported had an active role in collective bargaining.

The District maintains that the Board's findings are against the manifest weight of the evidence and presents three basic arguments concerning the principals: (1) that their personnel-related functions render them managerial employees; (2) that their role in the grievance procedure renders them managerial employees; and (3) that their current role in the collective bargaining process renders them managerial employees. In our opinion none of these functions so render them.

In the private sector the NLRB has consistently found that personnel-related duties do not necessarily indicate the manager acts in a "managerial capacity" under the NLRA. In *Goodrich* the office managers were found to hire, fire, discipline, promote, and handle first-step grievance procedures for employees. The office managers were

also supposed to participate in collective bargaining negotiations if a unit were certified. The NLRB found the managers effectuated set policy. Their secretaries, who assisted them in all matters related to their work, were not confidential employees within the meaning of the NLRA. (See also *Greyhound Lines, Inc.* (8th Cir. 1981), 257 N.L.R.B. 477, *enforcing* (8th Cir. 1981), 660 F.2d 354; *Holly Sugar Corp.* (1971), 193 N.L.R.B. 1024; *Carolina Telephone & Telegraph Co.* (1981), 258 N.L.R.B. 1387.) In the area of educational law, several courts have addressed the issue of whether a principal's control over his school and advisory input into collective bargaining or labor policies renders him a managerial employee. In *School Committee v. Labor Relations Com.* (1978), 376 Mass. 112, 379 N.E.2d 1077, and *Copiague Union Free School District v. New York State Public Employment Relations Board* (1976), 55 A.D.2d 596, 389 N.Y.S.2d 392, the courts upheld agency findings that principals were not managerial employees within the State acts.

It is not questioned that the principals handle confidential personnel matters but the Board has specifically rejected a contention that "confidential" under the Act extended to all confidential matters. In *Vermilion Occupational Technical Center* (1985), I Public Employee Reporter (Illinois edition), par. 1103 (Labor Relations Press, 1985)), it is stated that confidential status should not be accorded secretaries who handled information exempt from inspection under the Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 201 *et seq.*). The Board stated that the NLRB had consistently adhered to the principle that confidential information be related to labor relations in the "labor-nexus" test and that such a test had a reasonable basis, citing *NLRB v. Hendricks County Rural Electric Membership Corp.* (1981), 454 U.S. 170, 70 L. Ed. 2d 323, 102 S. Ct. 216.

The evidence in the instant case revealed that the day-to-day functions of the principals involved only the effectuation of policy, not its formulation and determination. They did not testify that their activities in regard to discipline, recommendations for hiring and firing, evaluating, or dealing with complaints of parents in any way deviated from the District's policies. Moreover, these matters were all known and discussed with the teacher involved. The principals did testify that they proposed budgets for their buildings, but there was no evidence that their proposals were acted upon by the District.

The principals' personnel functions did not render them managerial employees within the meaning of the Act.

■ As to the second argument, the principals' function in the grievance procedure, the District again maintains that this is part of

"labor relations" to which the District would assign a broad spectrum contrary to the prior holdings of the Board and the NLRB.

The record shows that the principals were involved only in the first-step grievance procedure. The NLRB has held that such a function does not make the employee a managerial one. (*Carolina Telephone & Telegraph Co.* (1981), 258 N.L.R.B. 1387; *Flintkote Co.* (1975), 217 N.L.R.B. 497; *Holly Sugar Corp.* (1971), 193 N.L.R.B. 1024.) In Pennsylvania, whose statute is remarkably similar to ours, their supreme court held that principals handling grievances at the first-step did not formulate nor determine policy. (*Pennsylvania Labor Relations Board v. Altoona Area School District* (1978), 480 Pa. 148, 389 A.2d 553.) A contrary result was reached by the Missouri court in *Missouri National Educational Association v. Missouri State Board of Mediation* (Mo. 1985), 695 S.W.2d 894, but in that case the principals directly participated in collective bargaining negotiations with the teachers.

The evidence in the instant case showed that the principals handled very few grievance procedures. Moreover, at grievance meetings at least two other persons were present, the aggrieved person and a bargaining representative, and generally Fleming, the assistant superintendent for instruction and personnel, also attended. Thus, no information would be generated (the principals' notes were typed by the secretaries) which was not already known to other persons who attended the sessions.

Under the NLRB and Pennsylvania authorities the principals' functions in the grievance procedures did not make them managerial employees.

■■ The District's third argument concerns the principals' functions in the collective bargaining process. The record shows that they attend bimonthly meetings of an administrative council. Others attending are Fleming, Avon Arbo, assistant superintendent of finance and operations, and the superintendent. Fleming testified that the meetings cover curriculum, district policy, personnel, and current events. The principals had the opportunity to "react to proposed directions by the district, *** [and] they have an opportunity to make suggestions from their side of the table." Two principals have sat in on bargaining sessions as observers. The District plans to increase their role in collective bargaining.

There is no evidence that the principals' suggestions and reactions were ever acted upon or considered by the District. Their planned future role would not control their current status for purposes of determining whether their secretaries are confidential employees. The

NLRB has found that advisory input into the collective bargaining process does not mean that the person is formulating, determining, and effectuating policy for the purposes of the NLRA. (*Weyerhaeuser Co.* (1968), 173 N.L.R.B. 1170; *Holly Sugar Corp.* (1971), 193 N.L.R.B. 1024; *Carolina Telephone & Telegraph Co.* (1981), 258 N.L.R.B. 1387.) In *Altoona* the court specifically rejected the argument that the principals' role in offering opinions about proposals rendered them managerial employees. We are persuaded by that authority.

&#9646;&#9646; To summarize, we are of the opinion that none of the principals' functions, individually or collectively, make them managerial employees within the meaning of the Act. It follows that their secretaries are not confidential employees. They type grievance materials which might be considered confidential but this does not make them confidential employees. (*Pennsylvania Labor Relations Board v. Altoona Area School District* (1978) 480 Pa. 148, 389 A.2d 553; *Vermilion Occupational Technical Center* (1985), I Public Employee Reporter (Illinois edition), par. 1103 (Labor Relations Press 1985); see also *Los Angeles New Hospital* (1979), 244 N.L.R.B. 960, *enforcing* (9th Cir. 1981), 640 F.2d 1017.) As we have already stated, our Act must be construed consistently with the NLRA. The Board has taken a narrow view of "labor relations" and we find no basis for quarreling with that interpretation.

&#9646;&#9646; Finally, we turn to the case of Norma Simmons. It will be recalled that she handled overflow ·work from Gail Moody, secretary to Fleming. The Board held that Moody was a confidential employee, and it is not disputed that Fleming was one who formulated, determined, and effectuated policy. The Board found that Simmons was not confidential and argues that since Simmons does not regularly handle Fleming's work, its finding is not against the manifest weight of the evidence in her case. We do not agree and are of the opinion that the Board's finding anent Simmons is contrary to law.

Section 2(n)(i) of the Act requires that the secretary "in the regular course of his or her duties" act in a confidential capacity to one who formulates, determines, and effectuates policy. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1702(n)(i).) Part of Simmons' regular duties is the overflow work from Moody. The NLRB has found that a person who performs confidential duties on a sporadic basis is still confidential. See *Springhill Bank & Trust Co.* (1978), 238 N.L.R.B. 127.

The portion of the order of the Board finding that the principals' secretaries are not confidential is not against the manifest weight of the evidence and is accordingly affirmed as to them; the portion relat-

ing to Norma Simmons is contrary to law and is reversed.

Affirmed in part and reversed in part.

MORTHLAND, J., concurs.

PRESIDING JUSTICE McCULLOUGH, dissenting:
The appeal is not timely filed. The majority determines that the appeal is timely filed and bases its decision upon section 1100.30(c) of title 80, chapter III, of the Illinois Administrative Code (80 Ill. Admin. Code, ch. III, sec. 1100.30(c) (1984)).

The majority gives credence only to the first sentence of subsection (c) which provides that the time period begins running upon the service of notice or other document upon the party. Three days shall be added to the *prescribed period.* The words "prescribed period" makes this sentence ambiguous to say the least. What is the "prescribed period"? None of the provisions of section 1100 sets forth any time limits which would be considered to be dealt with by the term "prescribed period." Subsection (b) of section 1100.30 does talk about when "a time period prescribed under the Act or these rules." No times are set forth in section 1100 and any references to time periods must be looked for in the Act itself. Neither the second sentence of subsection (c) nor subsections (a), (b), or (d) of section 1100.30 can be ignored; section 1100.20, Filing and Service of Documents, must also be considered. 80 Ill. Admin. Code, ch. III, sec. 1100.20 (1984).

The ambiguity inherent in the language becomes even more apparent when one considers the effect of the second sentence of subsection (c). The three-day extension of time because the document is mailed "shall not be added" if "any extension of time" has been previously granted. Is the extension of time cumulative as to every portion of the proceedings before the Board or does it apply to extensions of time granted between the individual steps of the proceedings?

If one considers subsection (d), one sees that the extensions may be granted upon a timely application to the Board or hearing officer, who will grant the extension if compliance is burdensome for the party. The conclusion that the "time period" referenced in the first sentence of subsection (c) is an internal limitations period set forth in the Act is buttressed by the fact that it may be extended, or not extended, at the discretion of the Board. The two subsections are meaningless if considered in the context of the Board's orders.

When extended to its logical conclusion, the rule would allow the Board to extend the period during which a party must file a petition

for review pursuant to the Administrative Review Act (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) or not add the three days because of mailing at its discretion once a party shows compliance is burdensome. Undue confusion will ultimately result when issues about whether a petition has been filed in a timely fashion arise. The discretionary impact of the rule allows the Board to extend the jurisdictional time period for filing petitions before this court in a haphazard fashion, contrary to the definite and relatively clear statement of applicability present in *Gemini Services, Inc. v. Martin* (1986), 141 Ill. App. 3d 17, 489 N.E.2d 1145.

The majority refers to *Gemini* which involved the question of whether the complaint was filed within the 35-day requirement of section 3—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 3—103). In *Gemini*, this court stated: "Although the question is a close one, we conclude that the complaint was timely filed." (*Gemini Services, Inc. v. Martin* (1986), 141 Ill. App. 3d 17, 17, 489 N.E.2d 1145, 1146.) In *Gemini*, the particular section with respect to service of pleadings provided:

"Section 5300.30   Service of Pleadings

a) Manner of Service. Unless otherwise provided, all motions, orders, notices and other pleadings required to be served under the Act or this Part shall be served either personally or by first-class mail.

b) Proof of Service. Where service is required, proof of service shall be filed with the Commission consisting of the verified statement of the individual making service, specifying the manner and date of such service.

c) Effective Date of Service by Mail. Service by mail shall be deemed complete four days after mailing of the document, properly addressed and posted for delivery to the person to be served." (56 Ill. Admin. Code, ch. XI, sec. 5300.30 (1985).)

That section and all of its subsections were considered, not picking out one sentence only. The procedural rule of the Human Rights Commission in *Gemini* provided a method of proving that service was filed by filing proof of service with the Commission. It also shows an effective date of service by mail and as to when the service is deemed complete. That rule uses the word "pleadings" in the caption to the section and this court indicated that although that was the title of the particular rule, the section also classifies an order as a pleading because in section 1.3(a) of title 56, chapter XI, of the Illinois Administrative Code (56 Ill. Admin. Code, ch. XI, sec. 5300.30 (1985)), the rule referred to "motions, *orders*, notices and other pleadings." (Em-

phasis added.) Similar language is not present in the rule which is the subject of this suit unless the words "or other document" mean an order. This court stated in *Gemini* that "[d]espite the uncertainties and ambiguities of section 1.3, we hold it to be applicable to the computation of the 35-day period here." *Gemini Services, Inc. v. Martin* (1986), 141 Ill. App. 3d 17, 20, 489 N.E.2d 1145, 1148.

Administrative rules have the force and effect of law and must be construed under the same standards which govern statutory construction. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 485, 202 N.E.2d 522, 524; see generally *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 87; *Foley v. Civil Service Com.* (1980), 89 Ill. App. 3d 871, 412 N.E.2d 612; *Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 335 N.E.2d 600.) An unambiguous administrative rule is not open to construction but should be interpreted as meaning what it clearly expresses. (*Chadesh v. Commonwealth Edison Co.* (1984), 128 Ill. App. 3d 827, 832, 471 N.E.2d 628, 632.) Courts also should not read language or limitations into the rule or exclude conditions contained within it. See generally *Lipman v. Board of Review* (1984), 123 Ill. App. 3d 176, 462 N.E.2d 798.

In construing statutes, the courts give effect to the intent of the legislature and give effect to as much of the statute as possible. (*Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 472 N.E.2d 431.) Statutes should be construed so that no clause is rendered meaningless of superfluous. (*In re Estate of Mulvaney* (1984), 128 Ill. App. 3d 133, 470 N.E.2d 11.) Courts must not be guided by a single sentence or by an isolated provision but should consider each provision in conjunction with every other provision of the statute in light of its purposes. *Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 387 N.E.2d 300; *Gibson v. Barton* (1983), 118 Ill. App. 3d 576, 455 N.E.2d 282.

Considering these principles, the rule in question appears to apply to the internal limitations period stated within the Illinois Educational Labor Relations Act. The rule is also distinguishable on its face from the rule relied upon in *Gemini*. The title of the instant rule is "Computations and Extensions of Time." Sections (a) and (b) by their terms are limited to periods of time prescribed within the Illinois Educational Labor Relations Act. Section (c) picks up the words "time period" from sections (a) and (b) and notes that when a time period starts by service of notice or other document three additional days are added to the "prescribed period," if the document is sent by mail.

However, no additional days are added to the "prescribed period" if an extension of time has already been granted. Section (d) then provides that extensions will be provided by the Board or hearing officer on a specific showing that compliance with the deadline will be unduly burdensome.

If the rule is viewed in its entirety, the time period referred to in section (c) is a period prescribed under the Act or rules, which the Board under its discretionary authority may extend.

If one views only section (c) of the rule and applies it to final orders of the Board, the last sentence of section (c) of the rule would be superfluous. A party would never request an extension of time on the filing of the Board's orders so would always have three extra days if the order were mailed. Administrative rules, like statutes, should be read in their entirety and as many parts of the rule as possible given effect. If one applies the first sentence of section (c) to orders of the Board, one must disregard sections (a), (b), (d), and the last sentence of section (c).

In contrast, in *Gemini*, the entire rule could be viewed as a whole and by its express terms apply to orders as well as other documents. It also did not contain any language about "extending the time period." It stated that service by mail is "deemed complete" after four days.

Secondly, the 35-day time limit set forth in section 3—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 3—103) is not a time period prescribed by the Illinois Educational Labor Relations Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1701 *et seq.*). Although the Board may promulgate rules on when service of its orders is deemed complete (*Gemini Services, Inc. v. Martin* (1986), 141 Ill. App. 3d 17, 489 N.E.2d 1145), the language of the rule in *Gemini* and the language of the rule relied upon here are distinguishable. The rule here does not state that it applies to the orders of the Board, and the three-day rule appears to apply to internal limitations periods which may be extended at the discretion of the Board. The balance of the rules pertaining to the Illinois Educational Labor Relations Board do not contain any statement as to when service by mail of the Board's order is deemed complete. As section 3—103 of the Code of Civil Procedure provides, "[t]he method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency, but if no method is provided, a decision shall be deemed to have been served either when personally delivered or when deposited in the United States mail ***." (Ill. Rev. Stat. 1983, ch. 110, par. 3—103.) Section 1100.30 of title 80, chapter III, of the Illinois Adminis-

trative Code is not a procedure which has been set forth by the Board as a method of service. Therefore, the provisions of section 3—103 of the Code of Civil Procedure would apply. Ill. Rev. Stat. 1983, ch. 110, par. 3—103.

The 1970 Constitution of the State of Illinois, article VI, section 9, provides in part that "Circuit Courts shall have such power to review administrative action as provided by law." (Ill. Const. 1970, art. VI, sec. 9.) As the supreme court stated in *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893:

> "This court has held that when a court is in the exercise of special statutory jurisdiction, that jurisdiction is limited to the language of the act conferring it and the court has no powers from any other source." 109 Ill. 2d 202, 210, 486 N.E.2d 893, 895-96.

It is clear in the instant case that the statutes referred to by the majority do not provide a specified time for serving orders of the Board and the 35-day rule requirement of the Administrative Review Act applies.

The complaint was not timely filed and the matter should be dismissed.