THE CITY OF WOOD DALE, Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Appellees.

Second District No. 2—87—0479

Opinion filed January 29, 1988.

Bruce C. Mackey, of Klein, Thorpe & Jenkins, Ltd., of Chicago (Michael J. Duggan, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Marvin Sacks, of Marvin Sacks, Ltd., of Chicago (Joel S. Hymen, of counsel), for respondent Teamsters Local Union No. 714.

JUSTICE DUNN delivered the opinion of the court:

The City of Wood Dale (City), pursuant to section 11(e) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)), appeals from an order of the Illinois State Labor Relations Board (Board), which found the City guilty of an unfair labor practice for refusing to bargain with a bargaining unit previously certified by the Board. (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(4).) Teamsters Local Union No. 714 (Union) is an additional respondent. The issue presented for review addresses the Board's inclusion of two detectives of the City of Wood Dale police department in the bargaining unit.

On February 19, 1986, the Union filed a representation petition seeking certification as the exclusive representative for a collective bargaining unit of patrolmen, detectives, and assistant watch commanders of the City of Wood Dale. At the hearing on the petition, the City objected to the inclusion of the detectives, whose duties included internal investigations, on grounds they were confidential employees (Ill. Rev. Stat. 1985, ch. 48, par. 1603(c)) and had a conflict of interest with the patrol officers. The hearing officer rejected these contentions. In her recommended opinion, the hearing officer determined the factual record was insufficient to permit her to determine whether detectives were confidential employees, and the infrequency of the internal investigations in the small Wood Dale police department did not create a conflict of interest between the detectives and the patrol offi-

cers. On September 5, the Board accepted the recommendation of the hearing officer and ordered a representation election to be held. The election was held; thereafter, the Union was certified as the exclusive representative of the unit. On November 10, the Union filed an unfair labor practice charge alleging that the City had refused to meet and negotiate with the Union. On April 22, 1987, the Board adopted the hearing officer's recommendation finding that the City had committed an unfair labor practice. The City appeals from that order.

On appeal, the City argues the detectives are confidential employees and therefore should not be included in the bargaining unit, and the detectives do not belong in the same bargaining unit as the patrol officers. The Board contends its finding that detectives were not confidential employees is not against the manifest weight of the evidence and its bargaining unit determination that detectives should be included in the same unit as patrol officers is not clearly inappropriate. The Union contends the Board's findings are supported by law and the manifest weight of the evidence.

■■ ■ At the outset, a summary of the standards applicable to our review of the Board's action is in order. The function of the reviewing court is to determine whether the agency's findings are against the manifest weight of the evidence (*Board of Education v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 906), *i.e.*, whether an opposite conclusion is clearly evident. (*Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 872.) Although a reviewing court may not reweigh evidence or make independent determinations of facts, it must insure that an objective, rational decision was arrived at after a fair hearing at which competent evidence was introduced. (*Rockford*, 153 Ill. App. 3d at 872; *Board of Education*, 143 Ill. App. 3d at 906.) While a reviewing court is not formally bound by an agency's interpretations of law, administrative decisions interpreting the legal effect of statutory language are generally given great weight by the judiciary. (*Laborer's International Union v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 1057.) Against this backdrop, we proceed to a review of the contentions raised by the parties.

■ The first question we must resolve is whether the Board's determination that the two detectives should not be excluded as confidential employees was against the manifest weight of the evidence. Section 3(c) of the Act defines a confidential employee as

"an employee, who in the regular course of his or her duties, assists and acts in a confidential capacity to persons who for-

mulate, determine and effectuate management policies with regard to labor relations or who in the regular course of his or her duties has authorized access to information relating to the effectuation or review of the employer's collective bargaining policies." (Ill. Rev. Stat. 1985, ch. 48, par. 1603(c).)

The instant appeal concerns only the first prong of the definition, which is commonly referred to as the "labor nexus" test. (*Board of Education*, 143 Ill. App. 3d at 907-08; *B. F. Goodrich Co.* (1956), 115 NLRB 722, 724.) Therefore, whether the detectives are confidential employees depends on whether they assist and act in a confidential manner to persons who formulate, determine and effectuate labor relations policies for the City of Wood Dale. (*Board of Education*, 143 Ill. App. 3d at 908.) The Board determined the detectives were not confidential employees under the labor nexus test because the record failed to establish whether the persons assisted by the detectives performed the labor relations management functions for the City. Our review of the record supports the findings of the Board.

At the hearing on the representation petition, the evidence presented clearly established the detectives are responsible for conducting internal investigations of fellow patrol officers and background checks of prospective patrol officers. While not entirely clear from our review of the record, we defer to the Board's findings that the detectives perform these investigations at the direction of the chief of police or the city manager, and that the chief of police conveys the information obtained by the detectives to the police and fire board. Regardless, the record is devoid of any evidence concerning the labor relations responsibilities of the City of Wood Dale employees who are purportedly assisted by the detectives. Contrary to the City's claim, the "City of Wood Dale, Department of Police, Law Enforcement, Role and Authority Manual" fails to set forth the required information. We decline the City's invitation to infer from the evidence presented that the responsibilities of the parties purportedly assisted by the detectives include management decisions relating to labor relations policy. Consequently, whether the parties assisted by the detectives formulate, determine, and effectuate the labor relations policies for the City of Wood Dale cannot be determined. (*Cf. City of Burbank*, 1 Pub. Employee Rep. (Ill.) par. 2008, case No. 5—RC—45 (Illinois State Labor Relations Board, June 6, 1985).) It follows that the detectives cannot be classified as confidential employees. (*Board of Education*, 143 Ill. App. 3d at 911.) Therefore, the Board's finding in favor of the Union was not against the manifest weight of the evidence.

■■ ■ We next address whether the detectives should be included in the same bargaining unit with their fellow patrol officers. Section 9(b) of the Act provides in pertinent part:

"The Board shall decide in each case, in order to assure public employees the fullest freedom in exercising the rights guaranteed by this Act, a unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as: historical pattern of recognition; community of interest including employee skills and functions; degree of functional integration; interchangeability and contact among employees; fragmentation of employee groups; common supervision, wages, hours and other working conditions of the employees involved; and the desires of the employees." (Ill. Rev. Stat. 1985, ch. 48, par. 1609(b).)

Since the Board is authorized to determine the appropriate bargaining unit, we may not interfere with the discretionary authority of the agency "unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is contrary to the manifest weight of the evidence." (*Board of Education,* 143 Ill. App. 3d at 906.) Under the National Labor Relations Act (NLRA) (29 U.S.C. §141 *et seq.* (1982)), which is closely paralleled by the Illinois Public Labor Relations Act (*Rockford,* 153 Ill. App. 3d at 874-75), the National Labor Relations Board (NLRB) has broad discretion in determining appropriate bargaining units. (*NLRB v. Action Automotive, Inc.* (1985), 469 U.S. 490, 494, 83 L. Ed. 2d 986, 992, 105 S. Ct. 984, 987.) NLRB unit determinations will be upheld provided there is a "reasonable basis in law" supporting the determination (*NLRB v. Hearst Publications, Inc.* (1944), 322 U.S. 111, 131, 88 L. Ed. 1170, 1185, 64 S. Ct. 851, 861), and are "rarely to be disturbed." (*Packard Motor Car Co. v. NLRB* (1947), 330 U.S. 485, 491, 91 L. Ed. 1040, 1050, 67 S. Ct. 789, 793.) Thus, under the NLRA it has been held that unit determinations will only be set aside by a court of review when the designated unit is clearly not appropriate. (*NLRB v. Living & Learning Centers, Inc.* (1st Cir. 1981), 652 F.2d 209, 213; *NLRB v. J. C. Penney Co.* (5th Cir. 1977), 559 F.2d 373, 375.) The language of section 9(b) of the Illinois Public Labor Relations Act indicates that the unit approved need only be "appropriate," as opposed to most appropriate, best, or perfect. We therefore believe the "clearly not appropriate" standard of review is equally applicable here.

The two detectives sought to be excluded from the unit are former patrol officers appointed by the chief of police. The detectives' wages and benefits remain the same as patrol officers, and in emer-

gency situations, detectives serve as patrol officers. The detective position differs from the patrol officers in the following respects. Detectives receive specialized training and function 50% to 80% of their time with no direct supervision. Detectives are responsible for following up cases reported by the patrol officers that require further investigation and serve as crime scene coordinators. In the latter capacity, the detectives have full responsibility for all facets of the investigation. Detectives wear plain clothes and drive unmarked patrol cars. They are on call at all times and do not need the chief's authorization to work overtime. Detectives are evaluated by the chief under a different set of objectives than those used by sergeants to evaluate patrol officers. Finally, detectives are responsible for conducting internal investigations of fellow patrol officers and background checks of prospective patrol officers.

■ Putting aside the detectives' internal investigation responsibilities for the moment, the Board's finding that the detectives were appropriately included in the bargaining unit with the patrol officers is not against the manifest weight of the evidence. The detectives' wage and benefits are virtually identical to patrol officers'. The detectives and patrol officers both have common law enforcement duties and regularly work together in various circumstances. In addition, patrol officers sometimes assist detectives in undercover operations, and detectives sometimes act as patrol officers when necessary. Finally, excluding the detectives would unduly fragment the work force of the police department. We believe these factors are sufficient to uphold the unit determination of the Board.

■ The more troublesome question is whether the internal investigations conducted by the detectives create a sufficient conflict of interest with the patrol officers to warrant exclusion of the detectives from the bargaining unit. Before proceeding, we note our agreement with the Board that the background investigations of prospective patrol officers do not create a conflict of interest with the bargaining unit because prospective employees are not members of the unit at the time of the background investigations. Returning to the internal investigations of fellow officers, the record reveals that in the past eight years, detectives have conducted 10 to 12 investigations of fellow patrol officers. The investigations have involved less that 2% of the detectives' workload during that period. The results of the investigations apparently serve as the basis for any disciplinary action.

■ The Board adopted the hearing officer's recommendation that employees who infrequently perform internal investigations in small police departments, such as the one in Wood Dale, may be included in

the bargaining unit of persons they may investigate. This rule is consistent with the determinations made by other State labor boards. (See *City of Quincy* (Fla. PERC 1981), 7 FPER par. 12180; *Village of Newark, New York* (N.Y. PERB 1972), 5 PERB par. 4037.) Conversely, where the employee's sole function is to investigate misconduct by fellow employees, the State labor boards are consistent in determining that a conflict of interest exists requiring separate units for such employees. (See *City of Chicago*, 2 Pub. Employee Rep. (Ill.) par. 3017, case No. L—RC—8609 (Illinois Local Labor Relations Board, July 11, 1986); *New York Transit Authority* (N.Y. PERB 1979), 12 PERB par. 4028.) The apparent rationale behind the distinction between small departments that include one or two detectives who are responsible for internal investigations and large departments where certain employees exclusively conduct internal investigations of fellow employees is the effect on the community of interest of the employees. In the former case, there remains an overwhelming degree of community of interest, while in the latter, the community of interest is significantly diminished. Adoption of this rationale is implicit in the findings of the Board.

In our capacity as a court reviewing the Board's unit determination, we cannot say the Board's decision was unreasonable or clearly not appropriate. There are obviously countervailing factors involved in the present circumstances. The detectives' internal investigations of fellow officers create a conflict of interest which was recognized by the Board. However, and in the Board's view more importantly, the internal investigations involve only a small portion of the detectives' job functions. The remaining 98% of their duties entail law enforcement activity that is consistent with the goals of their fellow police officers. We believe the balance struck by the Board in this case and the State labor boards in the aforementioned cases is a reasonable one.

For the foregoing reasons, the order of the Illinois State Labor Relations Board finding the City of Wood Dale guilty of an unfair labor practice is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.